# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| ROBERT MORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:14-cv-01998-GMN-CWH |
| vs. | ) | |
| | ) | **ORDER** |
| GREEN TREE SERVICING, LLC, a | ) | |
| Delaware Limited Liability Company; | ) | |
| AMERICAN RELIABLE INSURANCE | ) | |
| COMPANY d/b/a ASSURANT, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion to Dismiss (ECF No. 10) filed by Defendant American Reliable Insurance Company ("ARIC"). Plaintiff Robert Morris ("Plaintiff") filed a Response (ECF No. 15), and ARIC filed a Reply (ECF No. 21). Moreover, Defendant Green Tree Servicing, LLC ("Green Tree") filed a Joinder to ARIC's Motion to Dismiss (ECF No. 16) to which Plaintiff filed a Response (ECF No. 20) and Green Tree filed a Reply (ECF No. 22).[1]

## I.     BACKGROUND

This case arises out of the purchase of force-placed insurance ("FPI") by Defendant Green Tree from Defendant ARIC. Plaintiff purchased real property located at 2495 April Breeze Lane, Henderson, Nevada 89002 (the "Property"), which was financed through Countrywide Mortgage, Inc. (Am. Compl. ¶¶ 4–5). Subsequently, Bank of America became the servicer of the mortgage until November 1, 2011, when Green Tree became the servicer of the mortgage. (*Id.* ¶¶ 5–6).

---

[1] Although Green Tree styles its motion as a joinder to ARIC's Motion to Dismiss, Green Tree presents its own dismissal arguments. (*See* Joinder, ECF No. 16). Thus, the Court will treat Green Tree's Joinder as a separate motion to dismiss pursuant to FRCP 12(b)(6).

Pursuant to the Deed of Trust, the servicer of the mortgage was responsible for the payment of insurance premiums through a mortgage escrow account.[2] (Deed of Trust at 5–6, ECF No. 16-1).  On November 17, 2011, Green Tree sent a letter to Plaintiff indicating that there was no homeowner's insurance on the Property and asked Plaintiff to provide proof of insurance or it would purchase FPI. (Am. Compl. ¶ 7; Ex. B-1 to ARIC's Mot. Dismiss, ECF No. 10-3).  Plaintiff alleges that he made his monthly payments in full, including the monthly escrow deposit used for insurance premiums, every month from April 2005 through March 2012. (Am. Compl. ¶ 13).  However, Plaintiff contacted Traveler's Insurance Co. (the insurance provider that Plaintiff selected when he purchased the Property), and learned that the policy had been cancelled in February 2011 for non-payment. (*Id.* ¶ 14).  Plaintiff alleges that he was never contacted or notified that the premiums were not being paid, and until November 2011, Plaintiff had never been contacted or notified that his policy had lapsed. (*Id.* ¶ 15–16).

Green Tree sent a second letter to Plaintiff on December 17, 2011, requesting proof of insurance coverage. (*Id.* ¶ 20; Ex. B-2 to ARIC's Mot. Dismiss, ECF No. 10-4).  Plaintiff alleges that proof of coverage was provided "the first week of January 2012." (Am. Compl. ¶ 20).  Next, Green Tree sent a third letter to Plaintiff in January 2012, notifying Plaintiff that he owed $660 for FPI that was purchased by Green Tree from ARIC and covered the months of November and December 2011. (*Id.* ¶ 21).  Plaintiff was informed by ARIC that Green Tree purchased FPI on January 5, 2012, and that ARIC had retroactively dated the policy to include coverage for the preceding two months. (*Id.* ¶ 37).  Plaintiff alleges that he continued to make

---

[2] The Court takes judicial notice of Exhibit A (ECF No. 10-1) to ARIC's Motion to Dismiss and Exhibits A–C, E–F (ECF Nos. 16-1–16-3, 16-5–16-6) to Green Tree's Motion to Dismiss. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Each of these documents is publicly recorded in the Clark County Recorder's office.  Moreover, the Court takes judicial notice of Exhibits B-1–B-3 (ECF Nos. 10-3–10-5) to ARIC's Motion to Dismiss.  These documents are alleged in Plaintiff's Amended Complaint, and no party questions their authenticity. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

his monthly mortgage payment on time "until he received a call from Defendant Green Tree who indicated Plaintiff's mortgage was delinquent (because the force-placed insurance had not been paid for) and that his monthly payments would not post to his account until he paid the $660 representing the alleged force-placed insurance." (*Id.* ¶ 24).

In August 2012, Plaintiff was sent a Notice of Default and Election to Sell, which Plaintiff alleges did not include any advisement as to Plaintiff's rights to mediation and did not comply with the Nevada Foreclosure Mediation Program. (*Id.* ¶ 29; *see* Ex. E to Green Tree's Mot. Dismiss, ECF No. 16-5).  As a result, on September 12, 2012, Plaintiff sent Green Tree a check in the amount of $5640.01, along with an accord and satisfaction, which Plaintiff alleges "clearly stated that if Defendant Green Tree cashed or otherwise deposited the check that it would be voluntarily entering into the Accord and Satisfaction and would agree to seven (7) enumerated items in connection with the Accord and Satisfaction." (*Id.* ¶¶ 38–39).

In October 2012, Plaintiff contacted Green Tree and was informed that the check for $5640.01 had been applied to trial payments under a loan modification program. (*Id.* ¶ 40).  Shortly thereafter, Plaintiff received documents from Green Tree purporting to modify the loan on the Property. (*Id.* ¶ 41).  Further, on March 9, 2013, Plaintiff received a Notice of Trustee's sale that indicated that the Property would be sold at public auction on April 2, 2013. (*Id.* ¶ 43).

Plaintiff originally filed the instant action in state court on March 27, 2013. (*See* Pet. for Removal, ECF No. 1).  Plaintiff subsequently filed his Amended Complaint, adding ARIC as an additional defendant. (*See id.*).  ARIC removed the action to this Court on December 02, 2014. (*See id.*).  Plaintiff's Amended Complaint asserts the following causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) intentional misrepresentation; (4) breach of fiduciary duty; (5) accord and satisfaction; (6) accounting of funds; (7) conversion; (8) civil conspiracy; (9) RICO; (10) racketeering; (11) racketeering conspiracy; (12) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*;

(13) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; (14) violation of the Nevada Deceptive Trade Practice Act, NRS 598.0903 *et seq.*; (15) violation of the Nevada Unfair Lending Practices Act, NRS 598D.010 *et seq.*; (16) wrongful foreclosure; (17) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; (18) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (19) violation of NRS 107; (20) violation of NRS 645F; (21) statutory damages. (Am. Compl. ¶¶ 44–246).

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegation are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to

the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.  **DISCUSSION**

Collectively, Green Tree and ARIC assert that each cause of action pled by Plaintiff should be dismissed for failure to state a claim.  Accordingly, the Court will analyze each cause of action in turn.

### A.  **Breach of Contract**

In his first cause of action, Plaintiff alleges that Green Tree breached the Deed of Trust by failing to pay homeowners' insurance premiums, failing to apply Plaintiff's mortgage payments to the principal balance of the Loan, and failing to acquire insurance equivalent to Plaintiff's prior homeowners' insurance. (Am. Compl. ¶¶ 51–53, ECF No. 6).

To state a claim for breach of contract in Nevada, the plaintiff must allege: (1) the existence of a valid agreement between the plaintiff and the defendant; (2) a breach by the

defendant; and (3) damages as a result of the breach. *Calloway v. City of Reno*, 993 P.2d 1259 (Nev. 2000).  Although Green Tree does not dispute the existence of the Deed of Trust as a valid agreement between the parties, it maintains that it did not breach because "Plaintiff's First Amended Complaint never alleges he made a payment to Green Tree with the escrowed insurance payment included" and "Green Tree was clearly not involved in any lapse and thus is not responsible for any breach of contract." (Green Tree's Reply 3:18–24, ECF No. 22).

Pursuant to Section 2 of the Deed of Trust, Green Tree was required to apply all payments accepted from Plaintiff "in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3." (Deed of Trust at 5, ECF No. 16-1).  Furthermore, Section 3 required Plaintiff to pay Green Tree "a sum (the 'Funds') to provide for payment of amounts due for: … (c) premiums for any and all insurance required by [Green Tree] under Section 5." (*Id.*).  Moreover, Green Tree was required to "apply the Funds to pay the Escrow items no later than the time specified under RESPA." (*Id.* at 6).  However, it was incumbent upon Plaintiff, pursuant to Section 5 of the Deed of Trust, to maintain insurance on the Property. (*Id.* at 7)  If Plaintiff failed to maintain insurance on the Property, Green Tree had the option to obtain insurance coverage at Plaintiff's expense, and Green Tree was "under no obligation to purchase any particular type or amount of coverage." (*Id.*).

First, Plaintiff alleges that Green Tree breached the Deed of Trust by failing to pay homeowners' insurance premiums. (Am. Compl. ¶ 51).  Plaintiff alleges that Green Tree became the servicer of the mortgage on November 1, 2011. (*Id.* ¶ 6).  Additionally, Plaintiff alleges that his original homeowners' insurance policy covering the Property was cancelled for non-payment in February 2011. (*Id.* ¶ 14).  Moreover, Plaintiff alleges that subsequent homeowners' insurance was not obtained by Plaintiff until the first week of January 2012. (*Id.* ¶ 20).  Because Plaintiff did not maintain homeowners' insurance on November 1, 2011, when

Green Tree became the servicer of the mortgage, there was no insurance premium that Green Tree could have made payments towards pursuant to Section 3 of the Deed of Trust. Therefore, the allegations of the Amended Complaint demonstrate that Green Tree could not have breached the Deed of Trust by failing to pay homeowners' insurance premiums.

Second, Plaintiff alleges that Green Tree breached the Deed of Trust by failing to apply Plaintiff's mortgage payments to the principal balance of the Loan. (*Id.* ¶ 52). Plaintiff alleges that he "made his Monthly Payment in full, including the Monthly Loan Payment and the Monthly Escrow Deposit, every month from April 2005 through March 2012." (Am. Compl. ¶ 13). Pursuant to Section 2 of the Deed of Trust, Green Tree was required to apply all payments accepted from Plaintiff "in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3." (Deed of Trust at 5). Accordingly, the Court finds that Plaintiff's Amended Complaint sufficiently pleads a claim of breach of contract based on Green Tree's alleged failure to apply Plaintiff's mortgage payments to the principal balance of the Loan.

Third, Plaintiff alleges that Green Tree breached the Deed of Trust by failing to acquire insurance equivalent to Plaintiff's prior homeowners' insurance. (Am. Compl. ¶ 53). However, as discussed above, the Deed of Trust provided that, if Plaintiff failed to maintain insurance on the Property, Green Tree had the option to obtain insurance coverage at Plaintiff's expense, and Green Tree was "under no obligation to purchase any particular type or amount of coverage." (Deed of Trust at 7). Moreover, the Deed of Trust explicitly provided that such FPI "shall cover [Green Tree], but might or might not protect [Plaintiff], [Plaintiff]'s equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect." (*Id.*). Further, the Deed of Trust provided that "[Plaintiff] acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that [Plaintiff] could have obtained." (*Id.*).

Accordingly, the Deed of Trust did not place an obligation on Green Tree to acquire insurance equivalent to Plaintiff's prior homeowners' insurance. Thus, Green Tree could not have breached the Deed of Trust by failing to acquire insurance equivalent to Plaintiff's prior homeowners' insurance.

In conclusion, inasmuch as Plaintiff's breach of contract claim relies on Plaintiff's allegations that Green Tree breached the Deed of Trust by failing to apply Plaintiff's mortgage payments to the principal balance of the Loan, Plaintiff's claim survives Green Tree's Motion to Dismiss. However, to the extent that Plaintiff's breach of contract claim relies on Plaintiff's allegations that Green Tree breached the Deed of Trust by failing to pay homeowners' insurance premiums or failing to acquire insurance equivalent to Plaintiff's prior homeowners' insurance, Plaintiff's claim does not survive Green Tree's Motion to Dismiss.

### B.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff's second cause of action alleges that Green Tree breached its duty of good faith and fair dealing. (Am. Compl. ¶¶ 56–66). Specifically, Plaintiff alleges that Green Tree breached the implied covenant of good faith and fair dealing by (1) "failing to pay homeowners insurance premiums on the Property and thereafter purchasing (or claiming to purchase) force-placed insurance and charging Plaintiff for it," (2) "refusing to apply Plaintiff's mortgage payments to the outstanding principal balance, making fraudulent representations regarding the purchase of force-placed insurance, attempting to extort funds from Plaintiff that were not due and owing, and refusing to comply with the terms of the valid Accord and Satisfaction that it voluntarily entered into," (3) "failing to acquire insurance when it realized that insurance coverage-which was Green Tree's responsibility to provide-had lapsed," (4) "purchasing force-placed insurance and, upon information and belief, receiving a kickback from the insurance company," (5) "backdating the force-placed insurance it purchased to cover time periods for which there was no risk of loss," and (6) "failing to disgorge (through either credit or refund)

payments made with Plaintiff's Monthly Escrow Deposit that were earmarked for homeowners' insurance but not used for homeowners' insurance." (*Id.* ¶¶ 58–63).

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *Crow v. Home Loan Ctr.*, No. 3:11–cv–00259–LRH–VPC, 2011 WL 2214118, at * 2 (D. Nev. 2011).

Green Tree maintains that Plaintiff's claim fails because "it was Plaintiff who in fact breached the Deed of Trust by his admitted refusal to pay for insurance for two (2) months." (Green Tree's Mot. Dismiss 7:15–16, ECF No. 16).  However, the Court finds that Plaintiff's Amended Complaint sufficiently pleads a claim for breach of the implied covenant of good faith and fair dealing.

## C.    Intentional Misrepresentation

Plaintiff's third cause of action alleges a claim of intentional misrepresentation against Green Tree. (Am. Compl. ¶¶ 67–78).  To succeed on a claim for fraud or intentional misrepresentation, a plaintiff must show: (1) a false representation by the defendant that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance. *See Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007).  Furthermore, a claim of "fraud or mistake" must be alleged "with particularity." Fed. R. Civ. P. 9(b).  A complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations

and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam).  Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." (*Id.*) (internal quotations omitted).  The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct alleged so that they can defend against the charge. *Less v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Here, Plaintiff alleges that, "[i]n January 2012, Green Tree told Plaintiff that it had purchased force-placed insurance for the Property in November 2011, when, upon information and belief, Green Tree never purchased force-placed insurance at all, and if it did, it was definitely not purchased until on or after January 5, 2012." (*Id.* ¶ 69).  Moreover, Plaintiff alleges that such representations were made via a notice received by Plaintiff in January 2012. (*Id.* ¶ 21).  Accordingly, Plaintiff's Amended Complaint alleges the time, content, identities of the parties, and the method by which these alleged misrepresentations were communicated. These allegations provide enough context surrounding the communications by Green Tree's employees to effectively provide notice to Green Tree of the specific misrepresentations alleged in the Amended Complaint.  Therefore, the Court finds that Plaintiff's Amended Complaint sufficiently pleads an intentional misrepresentation cause of action against Green Tree.

### D.    Breach of Fiduciary Duty

Plaintiff's fourth cause of action alleges a breach of fiduciary duty claim against Green Tree. (Am. Compl. ¶¶ 79–84).  Specifically, Plaintiff alleges that such fiduciary duties arose "[b]y virtue of the promissory note and deed of trust, and Defendant's position, status, and/or superior knowledge in connection with mortgages [and] homeowners' insurance." (*Id.* ¶ 80).

"[B]reach of fiduciary duty seeks damages for injuries that result from the tortious

conduct of one who owes a duty to another by virtue of the fiduciary relationship." *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009). To prevail on a breach of fiduciary duty claim, plaintiff must first establish the existence of a fiduciary relationship. The relationship between a lending institution and its borrower-client is not fiduciary in nature absent the creation of a special relationship that would create a fiduciary duty. *Weingartner v. Chase Homes Fin., LLC*, 702 F. Supp. 2d 1276, 1288 (D. Nev. 2010).

Although Plaintiff attempts to argue that a fiduciary duty arose based on Green Tree's role in the insurance payment process, the Court finds that Green Tree's role, pursuant to the Deed of Trust, does not create a special relationship beyond the standard lender/borrower relationship that would establish a fiduciary duty. Thus, without the existence of a fiduciary duty, there can be no breach of that duty, and Plaintiff's claim for breach of fiduciary duty will be dismissed without prejudice. However, Plaintiff may amend his Amended Complaint if he can allege additional facts sufficient to establish a fiduciary duty owed to Plaintiff by Green Tree.

### E. Accord and Satisfaction

Plaintiff's fifth cause of action alleges a claim of accord and satisfaction. (Am. Compl. ¶¶ 85–92). Specifically, Plaintiff alleges that a valid dispute existed between Plaintiff and Green Tree, Plaintiff offered "to satisfy the dispute through payment of a certain sum and made it clear that the endorsement and cashing of the check constituted an acceptance of the terms," and Plaintiff and Green Tree entered into an accord and satisfaction on September 17, 2012. (*Id.* ¶¶ 86–88). Moreover, Plaintiff alleges that, "[p]ursuant to the Accord and Satisfaction, Defendant Green Tree agreed to do seven (7) enumerated items, which to date Defendant Green Tree has refused to do." (*Id.* ¶ 89).

Accord and satisfaction is an affirmative defense. *See* Nev. R of Civ. P. 8(c); *Pierce Lathing Co. v. ISEC, Inc.*, 956 P.2d 93, 95 (Nev. 1998); *Casarotto v. Mortensen*, 663 P.2d 352,

353 (Nev. 1983).  Plaintiff has not cited and the Court cannot find an instance where Nevada courts have allowed a plaintiff to plead accord and satisfaction as a cause of action. Accordingly, this claim will be dismissed with prejudice.  However, Plaintiff may have a different claim based on these allegations and can amend its Amended Complaint accordingly.

## F.   Accounting of Funds

Plaintiff's sixth cause of action alleges a claim for accounting against Green Tree. (Am. Compl. ¶¶ 93–97).  An action for accounting "may only be brought where there is a fiduciary or a trust relationship between the parties." *Simon v. Bank of Am., N.A.*, 2010 WL 2609436, *11 (D. Nev. June 23, 2010).  However, no such relationship exists between a lender and a borrower absent the creation of a special relationship that would create a fiduciary duty. *Giles v. GMAC*, 494 F.3d 865, 882 (9th Cir. 2007).  Thus, because Plaintiff and Green Tree have a lender/borrower relationship and Plaintiff does not plead a special relationship that would create a fiduciary duty, this claim will be dismissed without prejudice.  However, Plaintiff may amend his Amended Complaint if he can allege additional facts sufficient to establish a fiduciary duty owed to Plaintiff by Green Tree.

## G.   Conversion

Plaintiff's seventh cause of action alleges a claim of conversion against Green Tree. (Am. Compl. ¶¶ 98–105).  "A conversion is defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with, his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958).  To be a conversion, an act "'must be essentially tortious; a conversion imports an unlawful act, or an act which cannot be justified or excused in law.'" *Ferreira v. P.C.H. Inc.*, 774 P.2d 1041, 1043 (Nev. 1989) (*quoting Wantz*, 326 P.2d at 414).

Here, Plaintiff alleges that he sent a check in the amount of $5640.01 to Green Tree on September 12, 2012, "representing past mortgage payment due to date." (Am. Compl. ¶ 38).

Moreover, Plaintiff alleges that Green Tree "claimed that it had applied a portion of the funds…to trial payments under a loan modification program without Plaintiff's instruction." (*Id.* ¶ 40).  The Court finds that these allegations fail to state a claim of conversion.  These allegations fail to demonstrate that Green Tree's actions are essentially tortious, import unlawful acts, or cannot be justified or excused in law.

Plaintiff also maintains that his allegations pertaining to Green Tree's failure to apply several months' worth of escrow deposits to pay homeowners' insurance premiums support a claim of conversion. (Response to Green Tree's Mot. Dismiss 13:3–7, ECF No. 20).  However, as stated above, because Plaintiff did not maintain homeowners' insurance on November 1, 2011 when Green Tree became the servicer of the mortgage, there were no premiums for Green Tree to make payments on pursuant to Section 3 of the Deed of Trust.  Therefore, these allegations cannot support a claim of conversion.  Accordingly, the Court dismisses this claim without prejudice.  However, Plaintiff may amend his Amended Complaint if he can allege additional facts sufficient to support a claim of conversion.

### H.    Civil Conspiracy

Plaintiff's eighth cause of action alleges a claim of civil conspiracy against Green Tree and ARIC. (Am. Compl. ¶¶ 106–10).  Pursuant to Nevada law, a claim for civil conspiracy "consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consolidated Generator–Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (quoting *Hilton Hotels v. Butch Lewis Productions,* 862 P.2d 1207, 1210 (Nev. 1993)).  An "act in furtherance of the conspiracy [must] constitute an actionable tort." *Eikelberger v. Tolotti*, 611 P.2d 1086, 1088 & n.1 (Nev. 1980).

Plaintiff's Amended Complaint conclusorily alleges that "Defendants, by a concerted action, intended to accomplish one or more unlawful objectives for the purposes of harming

Plaintiff." (Am. Compl. ¶ 107).  However, Plaintiff clarifies that the actionable torts include conversion and fraud. (*See* Response to Green Tree's Mot. Dismiss 13:19–15:7).

First, as explained above, Plaintiff's allegations fail to support a claim of conversion. Thus, Plaintiff cannot maintain a claim of civil conspiracy based on the actionable tort of conversion.

Second, Plaintiff fails to allege a claim of civil conspiracy based on fraud.  Under Nevada law, an actionable civil conspiracy-to-defraud claim exists when there is (1) a conspiracy agreement; (2) an overt act of fraud in furtherance of the conspiracy; and (3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dept. of Motor Vehicles and Public Safety*, 110 P.3d 30, 51 (Nev. 2005).  "Thus, an underlying cause of action for fraud is a necessary predicate to a cause of action for conspiracy to defraud." *Id.*

A claim for conspiracy to commit fraud must be pled with the same particularity as the fraud itself. *See Wanetick v. Mel's of Modesto, Inc.*, 811 F. Supp. 1402, 1406 n.3 (N.D. Cal. 1992).  Thus, under Rule 9(b), a party must state with particularity the circumstances constituting the conspiracy. *See* Fed. R. Civ. P. 9(b).  Allegations of conspiracy must be accompanied by "the who, what, when, where, and how of the misconduct charged." *See Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Accordingly, to state a claim for conspiracy "a plaintiff must allege with sufficient factual particularity that defendants reached some explicit or tacit understanding or agreement.  It is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves towards this wrongful goal by virtue of a mutual understanding or agreement." *S. Union Co. v. Sw. Gas Corp.*, 165 F. Supp. 2d 1010, 1020–21 (D. Ariz. 2001) (internal citations and quotation marks omitted); *Goodwin v. Executive Tr. Servs., LLC*, 680 F. Supp. 2d 1244, 1254 (D. Nev. 2010).

Plaintiff has failed to allege with sufficient factual particularity that Defendants reached

a conspiracy agreement to defraud.  Accordingly, the Court dismisses this claim without prejudice.  However, Plaintiff may amend his Amended Complaint if he can allege additional facts sufficient to support a claim of civil conspiracy.

## I.   RICO

Plaintiff's ninth cause of action alleges a claim of civil RICO against Green Tree and ARIC predicated on mail fraud, wire fraud, and extortion. (Am. Compl. ¶¶ 111–38).  "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' 'business or property.'" *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (citing 18 U.S.C. § 1964(c)).

### 1.   Enterprise

An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).  An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007) (en banc).  A plaintiff pleads an enterprise through allegations of "an ongoing organization, formal or informal," and by allegations that "the various associates function as a continuing unit." *Id.* at 549.  An organization is ongoing if it "is a vehicle for the commission of two or more predicate crimes." *Id.* at 552 (quotation omitted).  Allegations that the organization existed over a two-year time span suffice to allege a continuing unit. *Id.* at 553.  Where the plaintiff alleges an associated-in-fact enterprise, the plaintiff need not allege "any particular organizational structure, separate or otherwise." *Id.* at 551.

Here, Plaintiff's Amended Complaint consists of merely conclusory allegations related to an enterprise. (*See* Am. Compl. ¶ 112 ("The combined efforts of Defendants or any of them constituted a criminal enterprise.")).  In his Response to ARIC's Motion to Dismiss, Plaintiff

contends that his Amended Complaint "is replete with supporting facts," but fails to cite to any allegations contained in the Amended Complaint. (Response to ARIC's Mot. Dismiss 13:16–17, ECF No. 15).  Rather, Plaintiff cites a case from the Northern District of California where the court found that an enterprise had been sufficiently pled. (*Id.* 13:24–14:5 (citing *Cannon v. Wells Fargo Bank NA*, C-12-1376 EMC, 2014 WL 324556, at *3 (N.D. Cal Jan. 29, 2014)). However, Plaintiff fails to show how the allegations in his Amended Complaint are comparable to those in *Cannon*.  Accordingly, because Plaintiff has failed to sufficiently allege an enterprise among Green Tree and ARIC, the Court can dismiss Plaintiff's RICO claim on this basis alone.  However, the Court will continue to analyze the sufficiency of Plaintiff's RICO claim.

### 2.    Pattern of Racketeering Activity

A "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years…after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).  While two predicate racketeering acts, as described in section 1961(1), "are necessary" to plead a civil RICO claim, "they may not be sufficient." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–38 (1989) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n.14 (1985)).  There is more to showing a "pattern" of racketeering activity than "simply [pointing to] the number of predicate acts involved." *Id.* at 238.

A "pattern" of racketeering activity is established by satisfying its two requisite components, relatedness and continuity, where continuity need not be alleged with certainty to overcome a motion to dismiss. *H. J., Inc.*, 492 U.S. at 239, 250.  In particular, the continuity component of "pattern" has two types, closed-ended and open-ended, and if either type is identified by the allegations, the "continuity" element is established. *Id.* at 241.  Generally, the closed-ended continuity refers to a specifically defined period of repeated conduct, and the

open-ended continuity refers to the threat of continued racketeering activity. *Id.* at 241-242.

Here, Plaintiff's specific allegations related to a pattern of racketeering activity merely recite conclusory allegations. (*See* Am. Compl. ¶ 112 ("Defendants engaged in a pattern of racketeering activity by engaging in mail fraud, wire fraud, monetary transactions with property derived from specified unlawful activity, transportation of stolen goods, and/or other activities in violation of the [RICO] Act."); ¶ 127 ("The pattern of racketeering was continuous."); ¶128 ("The pattern of racketeering was related to the enterprise.")).  Moreover, Plaintiff's general allegations fail to sufficiently establish the requisite relatedness and continuity to establish a pattern of racketeering activity.

### a.    Mail and Wire Fraud

Plaintiff bases his RICO claim on the predicate acts of mail and wire fraud. (Am. Compl. ¶¶ 114–23).  To state the elements of wire or mail fraud, the plaintiff must allege (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the mails or wires in furtherance of the scheme; and (3) the defendants acted with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004); *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003).  The mails or wires are used in furtherance of a scheme even if use of the mails or wires is not an "essential element" of the fraudulent scheme, so long as it is "a step in the plot." *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004) (quotation omitted).

Plaintiff contends Green Tree and ARIC had a scheme to defraud, which involved "the purchase of unwanted and unneeded insurance at an inflated rate, which is backdated, and which includes kickbacks from [ARIC] to [Green Tree]." (Response to ARIC's Mot. Dismiss 17:11–15).

First, the Court finds that Plaintiff's allegations that Green Tree and ARIC committed fraud by purchasing the FPI fail because the Deed of Trust explicitly granted Green Tree the

right to purchase FPI in the event that Plaintiff failed to maintain insurance. (*See* Deed of Trust at 7).  Plaintiff admits that the property was not insured when Green Tree became servicer of the mortgage. (Am. Compl. ¶¶ 6–7, 14–16).  Moreover, Plaintiff admits that he did not obtain new insurance until "the first week of January 2012"—almost two months after Green Tree mailed a notice to Plaintiff informing him that the Property was uninsured and that failure to maintain insurance could result in Green Tree's purchase of FPI. (Am. Compl. ¶¶ 7, 20). Furthermore, the Deed of Trust notified Plaintiff that Green Tree "is under no obligation to purchase any particular type or amount of coverage," and "that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that [Plaintiff] could have obtained." (Deed of Trust at 7).  Thus, Green Tree's purchase of FPI at a rate higher than what Plaintiff could have obtained, although unwanted by Plaintiff, was pursuant to its rights under the Deed of Trust and was not "unneeded" because Plaintiff had failed to maintain insurance.

Second, the Court finds that Plaintiff's allegations that Green Tree and ARIC committed fraud by backdating the FPI policy fail because the language of the Deed of Trust does not forbid Green Tree to obtain such policies, and the purchase of backdated insurance protected Green Tree's interest in the Property.  As noted above, it was Plaintiff's duty to maintain insurance on the Property. (Deed of Trust at 7).  If Plaintiff failed to do so, Green Tree had the right to obtain insurance to protect its interest in the Property. (*Id.*).  The Court finds that Green Tree's purchase of backdated FPI was not fraudulent because it protected Green Tree's interest in the property after Plaintiff failed to maintain coverage.

Other courts have reached similar conclusions regarding backdating claims. *See, e.g.*, *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (finding that the purchase of backdated insurance was necessary to maintain continuous hazard insurance on the property); *Rapp v. Green Tree Serv'g, LLC*, No. 12-CV-2493 (PJS/FLN), 2013 WL 3992442, at * 6 (D. Minn. Aug. 5, 2013) (finding that the purchase of backdated insurance protected Green Tree's

interest in the property at issue); *Lane v. Wells Fargo Bank, N.A.*, No. C12-04026 WHA, 2013 WL 269133, at *10 (N.D. Cal. Jan. 24, 2013) ("Plaintiffs have not, however, sufficiently alleged that Wells Fargo engaged in improper backdating of insurance procured for plaintiffs' property. The complaint contains only a single paragraph of conclusory allegations that Wells Fargo retroactively purchased insurance policies for periods of time where coverage had lapsed but no claims had been made.").

Third, Plaintiff alleges that Green Tree and ARIC committed fraud through a kickback scheme, whereby ARIC paid commissions to Green Tree based on its purchase of FPI. (Am. Compl. ¶¶ 61, 76, 194). Plaintiff refers to three different letters he received from Green Tree that informed Plaintiff of the lack of homeowners' insurance on the Property and asked Plaintiff to provide proof of insurance or Green Tree would purchase FPI. (Am. Compl. ¶¶ 7, 20–21). However, each letter notified Plaintiff that if Green Tree were to purchase FPI, it "will do so through an affiliated insurance agency, which is an agent for the insurer and may earn a commission on the insurance policy." (Exs. B-1–B-3 to ARIC's Mot. Dismiss, ECF Nos. 10-3–10-5). Thus, Plaintiff was fully notified on multiple occasions that Green Tree could receive a commission from ARIC if Plaintiff failed to provide proof of insurance. Accordingly, the Court finds that such allegations do not support a claim of fraud.

Other courts have rejected similar kickback theories. *Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110–11 (11th Cir. 2014); *Cohen*, 735 F.3d at 611. For example, in *Cohen*, the plaintiff failed to maintain hazard insurance as required under her loan agreement, and after multiple warnings from her lender, Wachovia purchased FPI that was backdated to the date the plaintiff's insurance lapsed. 735 F.3d at 605. Wachovia warned the plaintiff of the potentially higher cost of the FPI and that it could collect a commission from the insurer. *Id.* The plaintiff alleged that such "kickbacks" were a deceptive practice. *Id.* at 608. The Seventh Circuit held that the plaintiff "seems to think that mere applying this label converts the bank's otherwise

clear disclosures into a prohibited deceptive act." *Id.* at 609.  Further, the court held that there were no allegations of threats to take illegal, immoral, or otherwise wrongful action against the plaintiff, and "Wachovia simply reminded her of its contractual and legal remedies if she remained in breach of her obligations to maintain insurance on the mortgaged property." *Id.* at 610.

Regarding what the plaintiff labeled a kickback, the Seventh Circuit held that "simply calling the [Wachovia] commission a kickback doesn't make it one." *Id.* at 611.  Rather:

> The defining characteristic of a kickback is divided loyalties. But Wachovia was not acting on behalf of [the plaintiff] or representing her interests.  The loan agreement makes it clear that the insurance requirement is for *the lender's* protection….  Wachovia was not subject to divided loyalties; rather, it was subject to an undivided loyalty to itself, and it made this clear from the start. The commission for the lender-placed insurance was not a kickback in any meaningful sense.

*Id.*  The Court agrees with the reasoning of the Seventh Circuit.[3]  The Deed of Trust makes it clear that the insurance requirement is for Green Tree's protection: "Therefore, such coverage shall cover Lender, but might or might not protect Borrower." (Deed of Trust at 7).

Accordingly, the Court finds that Plaintiff's allegations in his Amended Complaint fail to plead racketeering activity based on the predicate act of fraud, either mail or wire.

### b.  Extortion

Plaintiff also bases his RICO claim on the predicate act of extortion under the Hobbs Act, 18 U.S.C. § 1951. (Am. Compl. ¶ 124–25).  "Extortion" under the Hobbs Act, "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

---

[3] The Eleventh Circuit has reached the same conclusion regarding such "kickback" theories. *See Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1110–11 (11th Cir. 2014) ("We agree with the Seventh Circuit that 'simply calling a commission a kickback doesn't make it one.'").

Plaintiff alleges that Green Tree's agents "threatened that Plaintiff's credit would be destroyed, that his home would be foreclosed on, and that it was Plaintiff's fault that his loan was in default." (Am. Compl. ¶ 28).  Moreover, Plaintiff alleges that, "[d]uring the month of August 2012, Plaintiff was sent a 'Notice of Default and Election to Sell,'" which "did not include any advisement as to Plaintiff's rights to mediation and did not comply with the Nevada Foreclosure Mediation Program." (*Id.* ¶ 29).  Further, Plaintiff conclusorily alleges that "Defendants obtained property from the Plaintiff, with Plaintiff's consent, which was acquired through inducement by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  However, the Court finds that these allegations do not sufficiently plead extortion under the Hobbs Act.

Accordingly, the Court finds that Plaintiff fails to sufficiently plead a civil RICO claim. However, the Court will give Plaintiff an opportunity to amend if he can plead facts sufficient to overcome the defects described herein.  Additionally, Plaintiff may not continue to rely on backdating or kickback theories to support the predicate acts of mail or wire fraud.

### J.    Racketeering

Plaintiff's tenth cause of action alleges a racketeering claim under state law against Green Tree and ARIC. (Am. Compl. ¶¶ 139–70).  Under Nevada law, RICO claims must be pleaded with specificity. *Hale v. Burkhardt*, 764 P.2d 866, 869 (Nev. 1988).  Moreover, the Nevada Supreme Court requires a plaintiff bringing a civil RICO claim under state law to articulate the factual allegations constituting the RICO claim directly under the portion of the Amended Complaint dedicated to the RICO claim:

> A civil RICO pleading must, in that portion of the pleading which describes the criminal acts that the defendant is charged to have committed, contain a sufficiently "plain, concise and definite" statement of the essential facts such that it would provide a person of ordinary understanding with notice of the charges.

*Id.* at 879–70.  Because civil RICO claims are deemed to be "quasi-criminal" in nature, mere incorporation by reference is not enough. *Id.*  Plaintiff has failed to fulfill this pleading requirement; therefore, the Court will dismiss the racketeering claim without prejudice. However, Plaintiff may amend his Amended Complaint to overcome the defects described herein.

### K.      Racketeering Conspiracy

Plaintiff's eleventh cause of action alleges a claim of racketeering conspiracy against Green Tree and ARIC. (Am. Compl. ¶¶ 171–76).  "Plaintiff[] cannot claim that a conspiracy to violate RICO existed if [he] do[es] not adequately plead a substantive violation of RICO." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 559 (9th Cir. 2010) (quoting *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000)).  Accordingly, because the Court found that Plaintiff failed to plead a substantive violation, Plaintiff's racketeering conspiracy must be dismissed without prejudice.

### L.      Violation of the Truth in Lending Act

Plaintiff concedes that his twelfth cause of action, alleging a violation of the Truth in Lending Act against Green Tree, is time-barred. (Response to Green Tree's Mot. to Dismiss 19:13–15, ECF No. 20).  Accordingly, this claim will be dismissed with prejudice.

### M.      Violation of the Real Estate Settlement Procedures Act (RESPA)

Plaintiff's thirteenth cause of action alleges a claim of violation of the Real Estate Settlement Procedures Act ("RESPA") against Green Tree and ARIC. (Am. Compl. ¶¶ 186–96).  Plaintiff fails to cite any specific provision of RESPA that Green Tree or ARIC violated. Such a failure itself is sufficient grounds for the dismissal of a RESPA claim. *See Stovall v. Nat'l Default Servicing Corp.*, 2011 WL 1103582, *3 (D. Nev. Mar. 23, 2011).  The Court, Green Tree, and ARIC should not have to speculate as to under which provisions Plaintiff is suing.  Accordingly, the Court dismisses this claim without prejudice.  However, Plaintiff may

amend his Amended Complaint to overcome the defects described herein.

## N.      Violation of the Nevada Deceptive Trade Practices Act

Plaintiff's fourteenth cause of action alleges a violation of the Nevada Deceptive Trade Practices Act ("DTPA") against Green Tree. (Am. Compl. ¶¶ 197–207).  Specifically, Plaintiff alleges that Green Tree violated the DTPA by (1) "representing that goods or services for sale (homeowners' insurance) were of a particular standard, quality or grade, while knowing that they were of another standard, quality, grade, style or model," (2) "making false or misleading statements of fact concerning the price of goods or services for sale," (3) "knowingly making false representations in a transaction," (4) "employing 'bait and switch' advertising," (5) "knowingly stating that services or were needed when no such services were actually needed," (6) "refusing to provide a refund when refunds were due and allowed," (7) "knowingly misrepresenting the legal rights, obligations or remedies of the Plaintiff, a party to a transaction with Green Tree," (8) "failing to disclose a material fact in connection with the sale or lease of goods or services," and (9) "violating a state or federal statute or regulation relating to the sale or lease of goods or services." (*Id.* ¶¶ 198–206).

Courts in this jurisdiction have routinely held that the Nevada Deceptive Trade Practices Act does not apply to mortgage transactions and real estate, but only to transactions of goods and services. *See, e.g., Rodriquez v. Bank of America Corp.*, No. 2:11–cv–01877–ECR–CWH, 2012 WL 3277108, at *2 (D. Nev. Aug. 8, 2012); *Baudoin v. Lender Processing Servs.*, No. 2:12–cv–00114–JCM–CWH, 2012 WL 2367820, at *3 (D. Nev. Jun. 21, 2012); *Reyes v. BAC Home Loans Servicing, LP*, No. 2:11–cv–01367–KJD, 2012 WL 2367803, at *2 (D. Nev. Jun. 21, 2012); *Rivera v. Nat'l Default Servicing Corp.*, No. 2:12–cv–00629–JCM–RJJ, 2012 WL 2789015, at *2–3 (D. Nev. Jul. 6, 2012); *Archer v. Bank of Am. Corp.*, No. 2:11–cv–01264–JCM–RJJ, 2011 WL 6752562, at *2 (D. Nev. Dec. 23, 2011); *Reyna v. Wells Fargo Bank, N.A.*, No. 2:10–cv–01730–KJD–RJJ, 2011 WL 2690087, at *9 (D. Nev. Jul. 11, 2011); *Alexander v.*

*Aurora Loan Serv.*, No. 2:09–cv–01790–KJD–LRL, 2010 WL 2773796, at *2 (D. Nev. Jul. 8, 2010).

The Court finds that Green Tree's purchase of FPI pertains to real property and is not subject to the Nevada Deceptive Trade Practices Act. The transaction occurred pursuant to the Deed of Trust. Moreover, Green Tree did not sell a good or service to Plaintiff. Rather, Green Tree was the consumer because it purchased FPI from ARIC to protect its interest in the Property. Accordingly, the Court dismisses this claim with prejudice.

O.      **Violation of the Nevada Unfair Lending Practices Act**

Plaintiff concedes that his fifteenth cause of action, alleging a violation of the Nevada Unfair Lending Practices Act against Green Tree, "cannot lie against a subsequent servicer of the loan." (Response to Green Tree's Mot. to Dismiss 22:20–25). Accordingly, this claim will be dismissed with prejudice.

P.      **Wrongful Foreclosure**

Plaintiff's sixteenth cause of action alleges wrongful foreclosure against Green Tree. (Am. Compl. ¶¶ 211–14). In Nevada, the common law tort of wrongful foreclosure requires Plaintiff to establish that at the time the power of sale was exercised no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale. *Collins v. Union Fed. Sav. & Loan Ass'n.*, 662 P.2d 610, 623 (Nev. 1983). Furthermore, a claim for wrongful foreclosure prior to sale is not actionable. *Huggins v. Quality Loan Servicing, LP*, 2011 WL 310490, at *5 (D. Nev. January 27, 2011). Therefore, Plaintiff has no claim for the common law tort of wrongful foreclosure because he does not allege that a foreclosure sale has taken place. Accordingly, this claim will be dismissed without prejudice. However, Plaintiff may amend his Amended Complaint to allege additional facts sufficient to support a claim of wrongful foreclosure.

/ / /

**Q.     Violation of the Fair Debt Collection Practices Act**

Plaintiff's seventeenth cause of action alleges a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") against Green Tree. (Am. Compl. ¶¶ 215– 18).  Plaintiff's claim under the FDCPA must be dismissed because Green Tree does not meet the definition of a debt collector.  The FDCPA defines a debt collector as "any person ... who regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  The term "debt collector" does not include:

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns a debt which was originated by such person [or] (iii) concerns a debt which was not in default at the time it was obtained by such person.

15 U.S.C. § 1692a(6)(G).  The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *See* S.Rep. No. 95–382, 95th Cong., 1st Sess. 3, reprinted in 1977 U.S.Code Cong. & Ad.News 1695, 1698. *See also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).  In this case, the FDCPA is inapplicable because Green Tree is not a debt collector.  Therefore, the Court dismisses Plaintiff's claim arising under the FDCPA with prejudice.

**R.     Violation of the Fair Credit Reporting Act**

Plaintiff's eighteenth cause of action alleges a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") against Green Tree. (Am. Compl. ¶¶ 219–22).  Congress enacted the FCRA in 1970 "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007).

Plaintiff alleges that Green Tree violated the FCRA "by failing to follow reasonable

policies and procedures regarding the accuracy and integrity of the delinquency dates provided on Plaintiff's account" and "by continually ignoring the resolution requests from Plaintiff." (Am. Compl. ¶¶ 220–21).

First, while Plaintiff does not allege the specific provisions of the FCRA that Green Tree violated, his allegation that Green Tree failed to follow reasonable policies and procedures regarding the accuracy and integrity of the delinquency dates provided on Plaintiff's account likely alleges a violation of Section 1681s–2(a), which imposes certain duties on those who furnish information to consumer reporting agencies ("CRAs") in order to encourage accurate reporting. However, "[d]uties imposed on furnishers under [Section 1681s–2(a)] are enforceable only by federal or state agencies." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

Second, Plaintiff's allegation that Green Tree continually ignored the resolution requests from Plaintiff likely alleges a violation of Section 1681s–2(b), which imposes certain duties on those who furnish information to CRAs upon notice of a dispute. However, "[t]hese duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584 F.3d at 1154. Here, Plaintiff does not allege that Green Tree received notice of dispute from a CRA. Accordingly, the Court dismisses Plaintiff's claim arising under the FCRA without prejudice. However, Plaintiff may amend his Amended Complaint to allege additional facts sufficient to support an FCRA claim.

## S.     Violation of NRS 107

Plaintiff's nineteenth cause of action alleges a violation of NRS 107 against Green Tree. (Am. Compl. ¶¶ 223–28). Green Tree contends that Plaintiff's claim "does not state a claim upon which relief may be granted and must be dismissed." (Green Tree's Mot. Dismiss 19:3–4). Plaintiff cites no law and makes no arguments regarding his NRS 107 claims. He therefore

consents to the motion being granted. LR 7–2(d).  Accordingly, the Court dismisses Plaintiff's NRS 107 claim without prejudice.

**T.      Violation of NRS 645F**

Plaintiff's twentieth cause of action alleges a violation of NRS 645F against Green Tree. (Am. Compl. ¶¶ 229–33).  Specifically, Plaintiff alleges, without citing a specific provision of the statute, that Green Tree violated the statute by charging for fees outside the scope of the Deed of Trust, by receiving consideration from a third party in connection with a covered service provided to Plaintiff that was not fully disclosed to the homeowner, and by misrepresenting aspects of covered service. (*Id.* ¶¶ 230–32).  The provisions of NRS 645F.300 *et seq.*, apply to foreclosure consultants, loan modification consultants, and persons performing covered services for compensation.  Plaintiff's Amended Complaint does not allege that Green Tree is a foreclosure consultant, loan modification consultant, or person performing covered services for compensation.  Accordingly, the Court dismisses Plaintiff's claim for violation of NRS 645F without prejudice.  However, Plaintiff may amend his Amended Complaint to allege additional facts to support an NRS 645F claim.

**U.      Statutory Damages**

Plaintiff's twenty-first cause of action alleges statutory damages against Green Tree and ARIC. (Am. Compl. ¶¶ 234–46).  However, a demand for damages is not independently actionable.  Accordingly, the Court dismisses Plaintiff's independent claim for statutory damages with prejudice.

**IV.    <u>CONCLUSION</u>**

**IT IS HEREBY ORDERED** that Defendant ARIC's Motion to Dismiss (ECF No. 10) is **GRANTED**.  The following claims are **DISMISSED without prejudice**: (1) civil conspiracy; (2) RICO; (3) racketeering; (4) racketeering conspiracy; and (5) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*  Moreover, Plaintiff's claim of

statutory damages is **DISMISSED with prejudice**.

      **IT IS FURTHER ORDERED** that Defendant Green Tree's Motion to Dismiss (ECF No. 16) is **GRANTED in part** and **DENIED in part**.  The following claims are **DISMISSED with prejudice**: (1) accord and satisfaction; (2) violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*; (3) violation of the Nevada Deceptive Trade Practice Act, NRS 598.0903 *et seq.*; (4) violation of the Nevada Unfair Lending Practices Act, NRS 598D.010 *et seq.*; (5) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; and (6) statutory damages.  Moreover, the following claims are dismissed without prejudice: (1) breach of fiduciary duty; (2) accounting of funds; (3) conversion; (4) civil conspiracy; (5) RICO; (6) racketeering; (7) racketeering conspiracy; (8) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; (9) wrongful foreclosure; (10) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (11) violation of NRS 107; and (12) violation of NRS 645F.  Furthermore, Defendant Green Tree's Motion to Dismiss is denied with respect to the following claims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) intentional misrepresentation.

      **IT IS FURTHER ORDERED** that Plaintiff shall file his second amended complaint by **Wednesday, July 22, 2015**.  Failure to file a second amended complaint by this date shall result in the Court **DISMISSING** the following claims **with prejudice**: (1) breach of fiduciary duty; (2) accounting of funds; (3) conversion; (4) civil conspiracy; (5) RICO; (6) racketeering; (7) racketeering conspiracy; (8) violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.*; (9) wrongful foreclosure; (10) violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (11) violation of NRS 107; and (12) violation of NRS 645F.

      **DATED** this 8th day of July, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Judge